# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**IVAN LEON**                                                                                  **PLAINTIFF**

**VS.**                                                          **CIVIL ACTION NO. 3:17cv273-DCB-LRA**

**WARDEN MARTIN, ET AL.**                                                                **DEFENDANTS**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This cause is before the undersigned for a report and recommendation regarding Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [21] and related filings. All moving Defendants,[1] including the Defendant who was served with process, Warden Martin, assert that the claims of Ivan Leon [hereinafter "Plaintiff" or "Leon"] should be dismissed due to his failure to exhaust the administrative remedies that were available to him through the Bureau of Prison's ["BOP"] mandatory process set forth in 28 C.F.R. §§ 542.13(a). Defendants also contend that the Complaint should be dismissed due to its failure to state a claim upon which relief may be granted.

After a review of the pleadings and exhibits, and the applicable law, the undersigned recommends that the motion to dismiss, or for summary judgment, be granted based upon Leon's non-exhaustion.

---

[1] The only served Defendant is Warden Martin, the Complex Warden at FCC Yazoo City. The summonses to the remaining individual defendants were returned unexecuted with the notation that each one did not work at FCC-Yazoo [14]. These include Unknown Payne, Unknown Rash, Unknown Scott, Unknown Walters, and Unknown Singleton.

## I.  PROCEDURAL HISTORY

Leon is a federal inmate incarcerated at the Federal Correctional Complex ("FCC") Coleman located in Coleman, Florida.  When the incident which formed the basis of his Complaint occurred, May 14, 2016, he was an inmate at the FCC-Yazoo, in Yazoo City, Mississippi, with an expected release date of June 7, 2024.

Plaintiff filed this civil rights action on April 17, 2017, claiming that he was stabbed by other inmates on May 14, 2016, in the recreation cage of the United States Penitentiary's ("USP") Special Housing Unit ("SHU").   In his Complaint, Leon contends that he and his SHU cellmate, Albert Donald, were placed in an outside recreation cage by Bureau staff members with two other inmates.  These other two inmates had "not been searched for weapons" and they immediately began attacking Leon.  They stabbed him multiple times about the head and upper torso area.  Leon contends that he was in SHU because he sought protective custody, so these inmates should have been screened and searched before he was placed in a cage with them.

Defendants filed the instant motion and attached their supporting exhibits, including the sworn Declaration of Lisa Singleton (Exhibit B, [21-2]).

## II. APPLICABLE LAW

Failure to exhaust is an affirmative defense, so these Defendants have the burden of demonstrating that Leon failed to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007).  At the summary judgment stage, this means that Defendants "must establish beyond peradventure all of the essential elements of the defense of

exhaustion to warrant summary judgment in their favor." *Dillon v. Rogers,* 596 F.3d 260, 266 (5th Cir. 2010). The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Tex. St. Board of Dental Exam'rs*, 304 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). The burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Allen v. Rapides Parish Sch. Bd.*, 304 F.3d 619, 621 (5th Cir. 2000).

As Defendants point out, the applicable section of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

The exhaustion requirement extends to *Bivens* suits by federal prisoners. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The statute clearly requires an inmate bringing a civil rights action in this Court to first exhaust his available administrative remedies. *Booth v. Churner*, 532 U.S. 731, 739 (2001). Exhaustion is no longer left to the discretion of the district court, but is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Exhaustion will not be excused when an inmate fails to timely exhaust his administrative remedies;

the exhaustion requirement also means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). It is not enough to merely initiate the grievance process or to put prison officials on notice of a complaint; the grievance process must be carried through to its conclusion. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). This is so regardless of whether the inmate's ultimate goal is a remedy not offered by the administrative process, such as money damages. *Id.*

In *Jones v. Bock*, 549 U.S. 199, 211 (2007), the Supreme Court confirmed that exhaustion was mandatory under the PLRA and that "unexhausted claims cannot be brought in court." The United States Supreme Court reiterated in *Ross v. Blake,* 136 S.Ct. 1850, 1856-57 (2016), that exhaustion is mandatory and that a court may not excuse a failure to exhaust, "even to take 'special circumstances' into account." Judicial discretion is foreclosed. *Id*. "Time and again, this Court has rejected every attempt to deviate from the PLRA's textual mandate." *Id.*, *citations omitted*.

The Fifth Circuit has confirmed that "the PLRA pre-filing exhaustion requirement is mandatory and non-discretionary," and that "district courts have no discretion to waive the PLRA's pre-filing exhaustion requirement." *Gonzalez v. Seal,* 702 F.3d 785, 787-88 (5th Cir. 2012) (per curiam). The Fifth Circuit case of *Wilson v. Epps*, 776 F.3d 296, 299-300 (5th Cir. 2015), also confirms that strict compliance with the administrative remedy programs is required. Filing the federal lawsuit prior to the time has ended for the response by the ARP program is impermissible for proper exhaustion. *Id.*

## III.  DISCUSSION

**A.     Defendants' Argument and Evidence**

28 C.F.R. §§ 542.13(a) provides for the levels of review if the attempt of informal resolution is unsuccessful.  First, the inmate must submit a Request for Administrative Remedy to the Warden of the facility in which he is incarcerated. § 542.14(a).  If unsatisfied, he may appeal to the appropriate BOP Regional Director by submitting a Regional Administrative Remedy Appeal.  Finally, if unsatisfied with the Regional director's response, he may appeal to the General Counsel of the BOP by submitting a Central Office Administrative Remedy Appeal.  *Id.*  There are time limits for each step in the review.  Only after he has completed each level of this process has he exhausted his administrative remedies with the BOP.

Defendants submitted the Affidavit of Lisa Singleton, a Deputy Case Management Coordinator at the FCC in Yazoo, in support of their motion.  Ms. Singleton is responsible for processing the administrative remedy requests filed by inmates.  She has access to and knowledge of the computer records known as SENTRY, which contain electronic records for tracking inmates in the federal system, including their ARP usage.  Ms. Singleton explained the program described in 28 C.F.R. §§ 542.10 *et seq*.  She explained that each initial form filing, a BP-9, is assigned a number known as a "Remedy ID".  This number is unique to that filing and may be used to follow the progression of a remedy from the BP-9 stage through the BP-10 and BP-11 stages.

Ms. Singleton conducted a search of the Bureau's SENTRY system for all administrative remedies filed by Leon. She found that Leon had initiated, but not completed, ten remedy series with the BOP, including seven that were submitted after the stabbing. Of these seven, only two appear to be related to the stabbing, remedy series 863011 and 869484. The others are irrelevant in this case, as in those Leon requests a transfer, criticizes the remedy process, appeals disciplinary hearings, and seeks sentencing credit in the others.

The first remedy series was number 863011, filed on May 20, 2016, six days after the May 14th attack on Leon and the only one filed within § 542.14's twenty-day timeline. Leon bypassed the informal and institutional level and filed the grievance directly with the Southeast Regional Office. [21-2, p. 4-5]. Leon contended that his remedy request was of a "sensitive" nature, which justified bypassing the informal and institutional levels. The regional officials disagreed and rejected his request. Leon failed to seek administrative review of this determination at the general counsel level, nor did he return to the institutional level to begin the informal resolution and institutional-level exhaustion process. Accordingly, Leon failed to exhaust his remedies in accordance within the time limitations required by § 542.14.

On July 18, 2016, Leon filed a second remedy series concerning the stabbing, alleging that the SHU staff allowed him to be assaulted in the SHU recreation cage. This was remedy series number 869484. The Warden responded on September 6, 2016, that Leon's allegations of staff misconduct were reviewed for "appropriate disposition," and

that if Leon was unsatisfied, he could appeal to the Regional Director within 20 calendar days. [21-3, p. 2].

The Bureau regional officials (from the Southeast Regional Office) received Leon's appeal on September 26, 2016. The appeal was rejected for failure to provide the BP-9 form and the warden's response as required by § 542.15(b)(1). He was informed that he could resubmit within 10 days of the date of rejection. On October 3, 2016, Bureau regional officials received Leon's second regional appeal. Again, it was rejected for the same reasons and he was instructed to submit his appeal in proper form within ten days from the rejection. [21-2, p. 5].

On October 21, 2016, Bureau regional officials received Leon's third regional appeal in remedy series number 869484. On October 24, 2016, Bureau officials received his fourth regional appeal. Like the first and second, both of these were rejected for the same reason, that he did not provide a copy of his BP-9 and the warden's response. He was told he could submit it in proper form within ten days of the rejections. [21-2, p. 6]. Leon failed to cure the defect in these regional appeals.

After the regional officials' rejection of his appeal, Leon then filed his first general counsel-level appeal. It was received at the Central Office in remedy 869484 on December 6, 2016. Like in each of his regional appeals, his first Central Office appeal was rejected for the same reasons. Instead of following the regional officials' instructions for filing an appeal, Leon elected to file a second appeal at the general counsel level. On January 23, 2017, Bureau Central Office officials received Leon's second and final

7

Central Office appeal in 869484. It was rejected for the same reasons, that he failed to include the response to his BP-9. He was instructed by general counsel-level authorities to "follow directions provided on 10-26-2016, regional rejection notice which stated you are missing your institutional response. Get help from unit team." [21-2, pp. 6-7.]

### B. Has Plaintiff exhausted?

In the undersigned's opinion, Plaintiff has not rebutted Defendants' supporting evidence, and dismissal is required under the requirement of strict exhaustion. Yet, as Defendants did point out, Leon did file two distinct remedies regarding this issue, but he never followed the directions provided and never received review on the merits of his complaints or properly completed the process of appeal on either of them. Leon partially admits that he failed to completely exhaust; he maintains he should be excused from the requirement because he was transferred from USP Yazoo City to USP Florence. In Leon's response [24], he contends that Defendants' motion is premature, as they have not responded to his discovery requests. Yet, no discovery is allowed unless approved by this Court, and Leon received no Order authorizing discovery. Furthermore, the issue of exhaustion must be determined prior to any discovery on the merits, rendering the dispositive motion on the exhaustion issue to be timely. Leon contends that this "failure to exhaust" claim is a "standard 'affirmative defense' used by the government employees in virtually every *Bivens* action when culpability is undeniable." [24, p. 2]. "Culpability" is irrelevant when determining whether exhaustion has occurred. Leon concludes that the only "unexcusable failure" was Defendants' failure to protect him. He also stated:

8

> Furthermore, contrary to the defendants' assertion of lack of continuity in the administrative remedy process, Mr. Leon did in fact submit a BP-8 and BP-9, and made copies and documented the times, dates and the names of the unit team officers he turnt [*sic*] them into. And while waiting on the response from the BP-9 he was transferred to another facility and was never given a response or the BP-9 back due to Mr. Leon's transfer and due to negligence of his unit team and administration at Yazoo City USP not returning the response within the time allotted by policy 543.18 of the CFR ... establishes directions for a complainant to deem a non-response as a denial when no response has not been rendered within the time allotted by policy. No response was rendered and Mr. Leon proceeded to the next level, BP-10 on to the Regional Office pursuant to 28 CFR § 542.18 for further review.

[24, pp. 3-4].

Leon contends that he did complete the exhaustion process and "exercised every measure of diligence possible under the circumstances...." *Id.* Citing *Dillon v. Rodgers*, 596 F.3d 260, 266 (5th Cir. 2010), he concludes that his available administrative remedies were unavailable, that his exhaustion is a question of fact, and that his case is an exception to the requirement.

The undersigned recognizes the difficulties Leon may have faced in his attempts to complete the process in the required manner. However, a ruling on the merits for remedy 869484, signed by Defendant Martin, dated September 6, 2016, was entered on his grievance. [21-3]. He simply never sent a copy of his initial grievance and this response in his appeals thereafter. He never explains precisely why he did not follow the directions and why the remedy process was unavailable to him. As Defendants point out, the remedy

9

process has been available to him throughout his term of incarceration. He has submitted 18 administrative remedies, including seven post-stabbing submissions and six post-transfer submissions for remedy series 869484 [Ex. D, 21-4]. Leon vaguely refers to having never received a response; however, he continued to file appeals as if he received one, never explaining why he could not comply with the directions.

If Leon did not receive the Warden's response, the Court in *Wilson* explained that a prisoner must pursue the grievance remedies to the conclusion, regardless of whether the prison responds. It reiterated that our circuit has taken a "strict" approach to § 1997e's exhaustion requirement, and that substantial compliance is not sufficient— instead a prisoner must exhaust administrative remedies *properly*. *Wilson,* 776 F.3d at 299-300, citing *Dillon,* 596 F.3d at 268. After the deadline for responding to one step expires, the prisoner may move forward to the next step. Only when time to respond to the *final step* expires has exhaustion occurred. The holding in *Wilson* applies to Leon and requires that his lawsuit be dismissed. If Leon did not receive the response, he could have sent copies of his initial grievance in his appeals and certified that he did not receive a response from the Warden. He presents no evidence that he tried to comply with the many directives in the appeals process.

Even if his grievance was improperly processed, he is still not excused from exhaustion. *See Taylor v. Burns,* 371 Fed. Appx. 479, 481 (5th Cir. 2010) ("Even if the relief [Plaintiff] sought was unavailable ... as a result of the way in which his grievance was processed, he is not excused from the exhaustion requirement."). Leon bears the

10

burden of demonstrating the futility or unavailability of administrative review, and he has failed to meet this burden. He obviously had access to the remedy program at Florence and could have exhausted his claims.

Leon contends that he has exhausted, or that his transfer caused the administrative remedies to be unavailable to him. Exceptions to the exhaustion requirement only apply in "extraordinary circumstances," and Leon must demonstrate the futility or unavailability of administrative review. See *Schipke v. Van Buren*, 239 F.App'x. 85, 86 (5th Cir. 2007) (quoting *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1992). This is a mixed question of law and fact under *Dillon*, and the evidence set forth by Defendants is sufficient for the Court to make a determination. Leon's first attempt to exhaust his claim (remedy series 863011) was filed and disposed of prior to his transfer. Even so, he failed to properly exhaust, even though he remained at Yazoo. After his transfer, he made at least six submissions on remedy series 869484, proving that he still had access to the Bureau's program after his transfer to USP Florence custody.

Leon has not provided evidence disputing Defendants' proof that the program was still available to him after his transfer, making it "available." "The simple fact that plaintiff was transferred [from one federal correctional institution] to another facility cannot excuse his failure to pursue and exhaust available administrative remedies." *Blank v. Tabera*, 544 F.App's 480 (5th Cir. 2013). A transfer only renders the process "unavailable" when an inmate is actually "barred" from utilizing the process. *Nottington v. Richardson*, 49 F.App's. 368, 374 (5th Cir. 2012). In this case, there is no factual

dispute: Leon filed six post-transfer appeal submissions, making the process available to him for purposes of exhaustion.

Leon sets forth his attempts to exhaust, but he never explains why he did not comply with the instructions he received regarding his appeal. He does not deny that the regional and general counsel-level personnel repeatedly responded to his requests while he was at USP Florence. They rejected his requests, but only because he failed to comply with filing requirements, not because of where he was located. His 'conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence' will not satisfy the nonmoving party's burden on summary judgment." *Garner v. Moore,* 536 Fed. Appx. 446, 449 (5th Cir. 2013) (quoting *Freeman v. Tex. Dep't of Criminal Justice,* 369 F.3d 854, 860 (5th Cir. 2004). In this case, Defendants' "uncontested, competent summary judgment evidence establishes beyond peradventure" that the remedy program at FCC was available to Leon both before and after his transfer and that he failed to complete it regarding the specific claims set forth in the Complaint. *See Fruge v. Cox,* Civil Action No. 14-0153, 2015 WL 964560 at *4 (W.D. La., March 4, 2015).

Leon alleges that Defendants' assertion of non-exhaustion is merely a "standard affirmative defense" used in all *Bivens* actions. [24, p. 2]. Although the defense may be often brought, this Court is mandated by the law to consider and apply the exhaustion requirement when appropriate. The Court cannot excuse it based upon the merits of a party's claim.

Because Leon failed to exhaust his administrative remedies, the Court need not reach the merits of the claims. *See Marshall v. Price,* 239 F.3d 365 (5th Cir. 2000) (declining to reach the merits of an inmate's Section 1983 claims after finding that he failed to exhaust his administrative remedies).

### III. CONCLUSION

For the reasons discussed in this Report and Recommendation, the undersigned recommends that Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [21] be **granted** and that Plaintiff's Complaint be dismissed without prejudice. Final Judgment should be entered.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. §636, *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 6th day of August 2018.

    /s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE